BENJAMIN B. WAGNER
United States Attorney
HEATHER MARDEL JONES
Assistant United States Attorney
United States Courthouse
2500 Tulare Street, Suite 4401
Fresno, California 93721
(559) 497-4000  Telephone
(559) 497-4099  Facsimile

Attorneys for the United States



FILED
AUG 3 0 2013
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY $17,285.00 IN U.S. CURRENCY,<br><br>Defendant. | 1:13-CV-01074-AWI-GSA<br><br>**ORDER REGARDING CLERK'S ISSUANCE OF WARRANT FOR ARREST OF ARTICLES *IN REM*** |

WHEREAS, a Verified Complaint for Forfeiture *In Rem* has been filed on July 12, 2013, in the United States District Court for the Eastern District of California, alleging that the defendant approximately $17,285.00 in U.S. Currency (hereafter "defendant currency") is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) for one or more violations of 21 U.S.C. §§ 841 *et seq.*;

And, the Court being satisfied that, based on the Verified Complaint for Forfeiture *In Rem* and the affidavit of Drug Enforcement Administration Special Agent Jason Pitcher, there is probable cause to believe that the defendant currency so described constitutes property that is subject to forfeiture for such violation(s), and that grounds for the issuance of a Warrant for Arrest of Articles *In Rem* exist, pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions;

///

1  IT IS HEREBY ORDERED that the Clerk for the United States District Court,
2  Eastern District of California, shall issue a Warrant for Arrest of Articles *In Rem* for the
3  defendant currency.

4  Dated: 5/30/13

   _____
   GARY S. AUSTIN
5  United States Magistrate Judge

# AFFIDAVIT OF JASON PITCHER

I, Jason Pitcher, being first duly sworn under oath, depose and say:

1. I am a Drug Enforcement Administration (DEA) Special Agent (SA), United States Department of Justice. I have been so employed since March, 2012. I am presently assigned to the DEA Resident Office in Fresno, California. During my training, I completed a seventeen-week DEA Basic Agent Training Academy in Quantico, Virginia. This training included instruction in the investigation of federal drug violations, including, but not limited to, Title 21, United States Code, Sections 841(a)(1) and 846. Prior to working for the DEA, I was employed by the Maine Drug Enforcement Agency for four years. I have been the case agent or lead investigator in several narcotics investigations as well as assisted in several more narcotics investigations which have led to the seizure of large quantities of narcotics and the arrests of numerous individuals. I have used various methods of investigation including but not limited to physical surveillance, electronic surveillance, phone toll analysis, records research, executed search warrants, trash searches, photo and video analysis, interviews of confidential informants, defendants and witnesses. I have discussed with law enforcement officers, cooperating defendants, and informants, the methods and practices used by narcotics distributors. I am a law enforcement officer as defined by federal statutes.

2. This affidavit is made in support of a warrant for arrest of defendant approximately $17,285.00 in U.S. Currency ("the defendant currency"). The defendant currency constitutes a thing of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical, and is proceeds traceable to such an exchange, and was used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, *et seq*.

3. The facts set forth in this affidavit are known to me as a result of reviewing official reports, documents, and other evidence obtained as a result of the investigation, and through conversations with other agents and detectives who have participated in this investigation and I have determined the following:

4. On December 28, 2012, at approximately 1:04 p.m., a California Highway

Patrol (CHP) officer conducted a traffic stop on a black Nissan Maxima bearing California license plate number 6DHH010, registered to Debra Ann Pereira, 3343 Baron Street, Madera, California. The stop was made pursuant to a violation of California Vehicle Code § 5200(A) – No Front License Plate. The vehicle was traveling northbound on State Route 99 south of Winton Parkway in Winton, California.

5. The officer made contact with the driver through the driver's side window and advised the driver of the reason for the stop. The driver was identified as Frank George Pereira, Jr. (hereafter "Pereira"). There was an overwhelming odor of raw marijuana coming from the vehicle. The vehicle appeared lived-in and the interior appeared unkempt. The passenger was staring straight forward with a terrified look on his face and had both his hands on his knees. Pereira was visibly nervous and his hands were visibly shaking as he handed the officer his license and registration.

6. The officer asked the passenger if he had any identification. The passenger related that he did and retrieved his identification card from his wallet and handed it to the officer. Pereira was asked to exit the vehicle and walk with the officer to his patrol vehicle. Pereira exited his vehicle and was asked if he had any weapons. Pereira stated that he did not, just that he had a little bit of marijuana in the center console. Pereira walked with the officer to his patrol car. Pereira stated that he was coming from Madera, California and heading to Dublin to see his mother for lunch. Pereira related that they did not know where they were going to go for lunch.

7. During the review of the vehicle documents, Pereira continued to be visibly nervous.

8. When asked how much marijuana was in the car, Pereira stated that there was less than an ounce. Pereira stated that he was the primary user of the vehicle. The officer ran a license check and check for warrants on both subjects. A preliminary frisk was conducted on Pereira for weapons and the officer felt was he recognized as a large amount of currency in Pereira's pocket. When asked about the currency in his pocket, Pereira stated that it was $1,900. When asked if the officer could see the money, Pereira stated it

was okay and the officer removed the money from Pereira's pocket. The officer flipped through the money and noted it was mostly $20 bills with some $100 bills. The officer handed the money back to Pereira. Pereira immediately began to justify possession of the money by stating that it was to help his mom with the mortgage. The bills appeared heavily circulated.

9. The officer walked back to the Nissan and contacted the passenger, identified has Joseph Cortez (hereafter "Cortez") about the travel. Cortez stated that they were coming from Madera, California and going to the bay area to visit family. When asked if they were going to visit anyone in particular, Cortez stated that they were not. When asked how much marijuana was in the car, Cortez stated that there was only what was in the center console. When asked how long they were going to be up in the bay area, Cortez stumbled and stammered and was unsure. When asked if he was just going along for the ride, Cortez nervously smiled and said he was. Cortez confirmed that they were not going to visit any specific person.

10. The officer returned to Pereira and asked if there was anything illegal in the trunk or in the car. Pereira stated that there was not. Pereira's visible nervousness increased while being asked about other contraband in the vehicle. The officer stated to Pereira that if there was anything else in the vehicle it would be better that Pereira tell the officer now, so the officer would know that Pereira was not trying to hide anything. Pereira related that there was less than an ounce of marijuana in the trunk of the vehicle. When asked if he had ever been arrested, Pereira stated that he had been arrested for possession of marijuana, but not for sales.

11. An assisting officer then arrived at the scene and was requested to assist the initiating officer with the search by standing by with the vehicle occupants. The initiating officer then began walking back to the Nissan to contact Cortez. As the officer reached the Nissan, Pereira stated that there was some money in the trunk. When asked how much there was, Pereira stated about $15,000 and that $7,500 was his and $7,500 belonged to Cortez.

3                    Affidavit of Jason Pitcher

12. The officer walked to the passenger side of the vehicle and contacted Cortez and asked him if there was anything else in the car besides the marijuana that the officer should know about. Cortez stated that there was not. When asked if there were any guns in the vehicle, Cortez stated there was not. When asked if there was any methamphetamine, Cortez stated there was not. When asked if there was any heroin, Cortez stated that there was not. When asked if there were any large sums of money, Cortez paused, looked to his left, and stated, "Not that I know of." The officer then asked Cortez that if there was any currency inside the vehicle, if any of it belonged to him. Cortez' nervousness increased and he stuttered and stammered and related that he did not know. The officer stated to Cortez that there were only two options and that was either the money was his or it was not. Cortez continued to hesitate and related that it was not his money. Cortez was asked to exit the vehicle and the officer performed a preliminary frisk of Cortez for weapons.

13. The officer asked Pereira and Cortez for consent to search the vehicle. Both Pereira and Cortez granted verbal consent for the search of the vehicle and signed a Consent to Search form.

14. The officer walked up to the Nissan, checked the driver's seat, the front passenger area, under the seat, and the center console. The officer then moved to the left rear seat area where multiple fast food and drink containers were located. The officer moved to the trunk area where multiple pieces of clothing were located along with two brand new pairs of men's shoes still in the box, a pillow, and miscellaneous food items and bags. The officer located a Victoria's Secret "Pink" bag with a plastic Target bag inside. Inside the Target bag, the officer located several rubber banded bundles of U.S. currency.

15. The entire passenger compartment and trunk area of the vehicle contained a strong odor of marijuana. Upon visual inspection of the trunk area, the initiating officer located a black backpack which contained small pieces of marijuana. The bag in which the money was found did not contain any items except for U.S. currency and the rubber bands that held it in bundles.

16. The officer contacted other officers, requesting assistance. One of the officers responded from the Merced CHP office. The officer then photographed the currency, as it was located in the vehicle. With Pereira's and Cortez' permission, the officer transported them to the Merced CHP office for interview regarding the currency. Once at the Merced CHP office, a preliminary count of the currency was made prior to turning it over to an agent for a drug detection canine inspection.

17. The officer conducted a post investigation of the contents of the Nissan and Pereira's criminal history. Based on training and experience, and given the presence of multiple fast food packages and drink containers in the vehicle along with a pillow, the officer opined that the driver and/or the passenger was sleeping in the vehicle. As there was no luggage in the vehicle which would be commonplace for overnight travel, taken together with the food containers and pillow, the officer opined that the car was being utilized for driving back and forth from locations without stopping, possibly for multiple days at a time given the amount of food. Presumably, the driver and passenger may be taking turns driving, while the other utilizes the pillow for sleep.

18. The registration on the vehicle indicates that on September 27, 2012, the odometer reading for the vehicle was 122,552 miles. A check of the odometer evidenced 143,155 miles as of the time of the traffic stop; a mileage increase of 20,603 miles driven in three months and one day equating to approximately 2,290 miles per week, or 10,000 miles per month, or 120,000 miles per year. These factors, taken together with the other factors, indicated to the officer that the occupants and the vehicle were being utilized for trafficking of narcotics.

19. A controlled sniff of the currency was conducted by a Merced County Deputy Sherriff and his trained and certified narcotics detecting canine, Taz. Prior to the placement of the currency in a hidden location, the deputy swept the area with Taz and Taz did not alert to the odor of illegal narcotics. The bag containing the currency was then hidden in the pre-swept area. Taz was introduced to the area and alerted to the odor of illegal narcotics on the location where the currency had been hidden.

20. An agent with the Merced Multi Agency Narcotics Task Force responded to the Merced CHP office. The initiating officer and another assisting officer removed the bundles of currency from the bag. The rubber bands were removed and the currency was examined.

21. The majority of the currency from the trunk appeared heavily circulated. There were six bundles and one bundle had no rubber band and only contained several loose bills. The currency from the six bundles was comprised of twenty-seven $5 bills, eighteen $10 bills, four hundred eighty-eight $20 bills, five $50 bills, and fifty $100 bills for a total of $15,325. The currency was unorganized and did not appear to have been counted or maintained.

22. The currency in Pereira's front pocket appeared to be from one of the six bundles being a majority of what would have been the seventh bundle. This currency also appeared heavily circulated. The currency located in Pereira's pocket consisted of forty-nine $20 bills and ten $100 bills, totaling $1,980. Both the currency located in the trunk of the vehicle and on Pereira emitted the odor of marijuana which the officers were able to smell while counting the currency.

23. The task force agent conducted an interview of Cortez. Cortez denied ownership of the defendant currency but said that it probably belonged to Pereira's mother, Debra, from whom Pereira borrowed the money to help pay for medical bills. Cortez did not know how much money was inside the bag. Cortez stated that they were on their way to Fremont to see his brother. Cortez admitted to using marijuana and stated that he has a medical marijuana card and has had the card for about one year. Cortez said that he suffered from depression, back aches, and that the marijuana helped him sleep. Cortez denied selling marijuana. Cortez stated that he had stopped growing marijuana this past year because Madera County banned outdoor marijuana grows. Cortez stated that he purchased marijuana from marijuana stores.

24. The task force agent then spoke with Pereira who said the money did not belong to him but to his mother, Debra, his mother's boyfriend, and Cortez. Pereira said that he picked up the money from his mother in Madera and was transporting it to Oakland

to his aunt. Pereira stated that his aunt was borrowing some of the money to help pay for his own medical bills. Pereira stated that there was $15,325 in the bag. Pereira said that about $8,000 belonged to his mother, $3,000 to his aunt, and $4,000 to Cortez. Pereira stated that he took some of the money out of his bag and put it in his pocket because he was going to borrow some of it. Pereira admitted to using marijuana and said that he suffered from pain throughout his body and smoked it daily. Pereira said that he did not grow marijuana and purchased it from marijuana stores. Pereira denied selling marijuana.

25. During an official count of the defendant currency by Bank of America, one of the $20 bills was determined to be counterfeit.

26. A review of Pereira's criminal history revealed that he has had prior arrests in 2000 and 2002 for possession of a controlled substance, arrests in 2006, 2007, 2009, 2010, and 2012 for possession of marijuana or hash for sales, among other arrests.

27. On or about April 25, 2013, Debra Pereira filed an administrative claim with the Drug Enforcement Administration alleging an ownership interest in the defendant currency, that the defendant currency is her personal savings collected over the years and from an inheritance. Debra Pereira further alleges that her son, Pereira, was delivering the defendant currency to her for her personal use. Frank George Pereira, Jr. submitted a statement that the defendant currency does not belong to him, but belongs to Debra Pereira.

28. Based on the evidence presented in this affidavit, it is my opinion that the currency described in this Affidavit are proceeds from criminal offenses or used to facilitate such criminal offenses, as described with more particularity above.

29. Based on the above, I believe there is probable cause to indicate that the defendant currency constitutes a thing of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical, and is proceeds traceable to such an exchange, and was used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, *et seq.*, and that a Warrant for Arrest of Articles *In Rem*, pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions Rule

1  G(3)(b)(i), be issued for the defendant currency.

JASON PITCHER
Special Agent
Drug Enforcement Administration

Sworn to and Subscribed before me this __30__ day of August 2013.

_____
Honorable Gary S. Austin
United States Magistrate Judge

Reviewed and approved as to form.

_____
Heather Mardel Jones
Assistant U.S. Attorney